■ In the Matter of DEPARTMENT OF SOCIAL WORK OF BETH ISRAEL MEDICAL CENTER, Respondent, for the Appointment of a Guardian of the Personal Needs and Property of PAMELA PANARTOS, an Alleged Incapacitated Person, Appellant. [764 NYS2d 87] —Order and judgment (one paper), Supreme Court, New York County (William Davis, J.), entered January 7, 2003, which granted the petition in this proceeding brought pursuant to Mental Hygiene Law article 81 and appointed a guard-

ian of the personal needs and property of appellant, who is alleged to be an incapacitated person, unanimously reversed, on the law, without costs, the petition denied and the matter remanded for a jury trial.

Appellant was admitted to Beth Israel Hospital on July 30, 2002, for treatment of an infected foot ulcer. She was confined to a wheelchair because of juvenile rheumatoid arthritis and her left leg had previously been amputated, which makes it difficult for her to move around unaided. While under the hospital's care, personnel concluded that she suffered dementia and bipolar disorder, was delusional and had impaired insight and judgment. She complained that her boyfriend, with whom she resided, abused her, so that she feared returning to live with him. Hospital personnel had also inspected her apartment and found it to be very neglected. The hospital stated a concern that appellant should not be discharged without provision being made for supervision and that she should be provided the benefits set forth in article 81 of the Mental Hygiene Law. As such, the hospital commenced this proceeding seeking an order for the appointment of a guardian.

Article 81 affords several procedural protections to persons for whom guardianships are sought. Section 81.11 (a) states that the necessity of a guardianship may be found only after a hearing, obviously requiring that such a drastic intervention in a person's liberty may not be made only on the basis of documents and other papers filed with the court. The court in this case conducted a hearing that it characterized as being only preliminary, but it did so almost peremptorily without appropriate notice to appellant and in the absence of important evidence. However, the more significant error is that the court ignored the additional due process feature of article 81, set forth in section 81.11 (f), that "[i]f any party to the proceeding on or before the return date designated in the order to show cause raises issues of fact regarding the need for an appointment under this article and demands a jury trial of such issues, the court shall order a trial by jury thereof. Failure to make such a demand shall be deemed a waiver of the right to trial by jury."

The hospital moved by order to show cause for the appointment of a guardian. Therein, appellant was informed that the court would conduct a hearing at which appellant had a right to object to any appointment; and that she also had a right to demand a jury trial and that, in the absence of a demand for a jury, the hearing would be conducted without a jury. The Mental Hygiene Legal Service (MHLS) was appointed counsel

for appellant for this purpose. During a conference call preceding the article 81 hearing, the MHLS counsel requested a jury trial for appellant. The following day, the court conducted a chambers conference, at which the court indicated that it was conducting a hearing to evaluate appellant's competence and whether a guardian should be appointed. Counsel again indicated that appellant demanded a jury trial. The court indicated that one purpose of the hearing was to decide whether appellant made a prima facie showing of entitlement to a jury trial. Counsel objected that the statute did not provide for a preliminary hearing to determine whether appellant should have a jury trial. Rather, counsel again demanded a jury trial, and requested, in the alternative, a stay of the proceeding so that she could seek an interlocutory appeal to the Appellate Division to determine appellant's right to a jury trial. The court denied the request for a jury trial and also denied the application for a stay, indicating that "if I determine there is a prima facia [sic], then we will proceed to the next step." The hearing was then conducted immediately. Counsel objected that she was prepared for a chambers conference and not for an immediate hearing, that she had not been informed that witnesses would be called that day, that she had not had any opportunity to question witnesses, and hence had none to call, that she had not been aware that the hospital would be calling witnesses, and that she had never met the psychiatrist whom the hospital proposed to have testify. Nevertheless, the hearing proceeded. A psychiatrist testified for the hospital regarding appellant's mental state, her physical condition, the neglectful state of her residential accommodations and neglect and abuse for which appellant blamed her boyfriend. A hospital social worker testified that the boyfriend had actually contacted Bellevue's Mobile Crisis Team, which contacted the hospital, and that the hospital decided to petition for a guardianship for appellant on the basis of its discussion with the Mobile Crisis Team, with HRA's Adult Protective Services, with appellant herself regarding her situation at home, and the condition in which she appeared at the hospital. The social worker also explained that the Visiting Nurse Service declined a referral for appellant, with the result that if the hospital discharged her home, a chronic health situation would worsen and she would be at risk without supervision. The social worker also recommended that while the article 81 proceeding was pending in regard to appellant's jury demand, it would be more beneficial to refer appellant to a rehabilitation facility rather than for her to remain in the hospital. Over counsel's objection, the court granted the hospital's request for a temporary discharge

to a nursing facility pending determination of whether a guardian should be appointed. The court then indicated that it would issue a decision "whether a prima facia case has been made and whether you should proceed to the next step, which is for a jury trial. You are entitled to a jury trial if the situation warrants it. If it's obvious that this patient is ill mentally, then it would just be a waste of time according to case law to have a jury trial just for exercising this."

By decision dated October 3, 2002, the court ordered appellant's transfer to a nursing facility pursuant to Mental Hygiene Law § 81.16 (b). The court also indicated that it had conducted a hearing to determine if there were issues of fact regarding the need for the appointment of a guardian such as would warrant a jury trial. The court then found that on the basis of the hearing testimony, a prima facie case had been made requiring the appointment of a guardian, that the appellant had "failed to rebut this prima facia case in any way and has failed to raise any issues of fact regarding the need for the appointment of a guardian," with the result that the application for a jury trial was denied. In support, the court relied on *Matter of Wiesenberg* (253 App Div 655 [1938]) and *Matter of Clarkson* (186 App Div 575 [1919], *affd* 227 NY 599 [1919]). At that time, the court noted that placement of appellant in a nursing facility was only temporary, that the ultimate goal was to return her to her home with supportive home care, visiting nurse services and other social services in her home environment, and that a guardian was necessary in furtherance of this goal. In the proposed order and judgment subsequently submitted by the hospital, though, the hospital proposed a finding that appellant was incapacitated and required the appointment of a guardian. In objecting to this proposed order and substituting a different proposed order, MHLS counsel emphasized that nursing home care was temporary and that the goal was to return her to her home with the above-noted social services. In the order and judgment under review, the court granted the hospital's petition.

We do not presently review the question whether appellant is incapacitated and requires appointment of a guardian. Rather, our present concern is procedural. The statute affords her the right to a jury trial so long as she timely makes a demand and raises factual issues as to the need of a guardian. Since the court declined to afford her an opportunity to develop a factual record, appellant was foreclosed from exercising her right to a jury trial. Rather, this record demonstrates a failure to ascertain numerous facts bearing on the appropriateness of

the ultimate relief, with the result that it cannot fairly be said that the petitioner hospital carried its burden of proof. Moreover, the manner in which the court proceeded, which it characterized as only "preliminary," intermixed considerations of her purported incapacity, which is the ultimate issue to be decided on the basis of clear and convincing evidence rather than on a prima facie showing, and whether or not there were unresolved factual issues. The result is that we are deprived of an opportunity to evaluate the relevant facts of this case. A factual assertion was made that Visiting Nurse Service was not an available resource, without an explanation why, but the court foreclosed cross-examination of the social worker regarding a method of appealing any such decision. Moreover, whether or not there were additional home care services that were available and that might foreclose the need for an appointment of a guardian was not set forth in the hospital's evidence, and for reasons set forth in the record, MHLS counsel was not provided with an opportunity to develop such a record. Moreover, the credibility of the witnesses called by the hospital presented an inherently factual dimension to this proceeding (*see Matter of Austin v Consilvio*, 295 AD2d 244, 246 [2002]).

The court's conclusion that no jury trial was warranted because there were no unresolved factual disputes ignores that no factual record of any value was even developed, through no fault of appellant. We are not holding that a jury trial is required under article 81 merely because it is demanded, without consideration of whether there are facts to be decided, but only that on this record, we cannot conclude that there were no factual issues to be resolved. Since the record is clear that appellant denied the need for a guardian and MHLS was not afforded an opportunity to make a record in support of this position, we find that a trial by jury is in order.

Finally, the somewhat ancient case law cited by the court, decided long before article 81 was enacted, addressing whether a petitioner had established a right to a jury trial, lacks persuasive authority. In *Wiesenberg*, the alleged incompetent person in that case objected to a jury trial, so that the utility of that holding is doubtful. In *Clarkson*, a provision of the then-extant Code of Civil Procedure required a court to make a preliminary finding that a person was incompetent, after which the court in its discretion could order a jury trial, a procedure clearly inapplicable under the current statutory provision that allows for no such discretion. Moreover, in *Clarkson*, as in *Wiesenberg*, the alleged incompetent person objected to a jury

trial. Concur—Nardelli, J.P., Tom, Rosenberger and Gonzalez, JJ.